CHARTER MEDICAL CORP., et al., Plaintiffs-Appellees,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellant.

No. 85–8378.

United States Court of Appeals, Eleventh Circuit.

May 6, 1986.

---

Glen A. Reed, Richard L. Shackelford, Atlanta, Ga., for plaintiffs-appellees.

Frank L. Butler, AUSA, Macon, Ga., Anthony J. Steinmeyer, Alfred R. Mollin, Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant.

Before VANCE, Circuit Judge, HENDERSON *, Senior Circuit Judge, and LYNNE **, Senior District Judge.

HENDERSON, Senior Circuit Judge:

The plaintiffs-appellees, five hospitals, filed this action in the United States District Court for the Middle District of Georgia challenging the Medicare Malpractice Rule, 42 C.F.R. § 405.452(a)(1)(ii) (1984). The district court held the Rule invalid and granted the plaintiffs both retrospective and prospective relief. The defendant-appellant, the Secretary of Health and Human Services (Secretary), appeals only that part of the district court decision awarding prospective relief.[1]

*Historical and Procedural Background*

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., establishes a system of federal reimbursement for medical care for the aged and disabled known as "Medicare." Under this system, hospitals enter into agreements with the Secretary to provide Medicare beneficiaries with medical services. Payments to these hospitals are determined by "fiscal intermediaries" which act as the agents for the Secretary. Prior to 1983, these payments were made pursuant to a "reasonable cost" analysis which allowed for provisional payments to a hospital during the course of a given year based on estimates of the hospital's costs. After the end of each fiscal year, the hospital submitted a cost report to the intermediary which audited the report to determine reimbursable costs. This determination was set forth in a Notice of Program Reimbursement (NPR). On the basis of this NPR, overpayments were recaptured or deficiencies were awarded.

If a hospital was dissatisified with the fiscal intermediary's final decision, and if the amount in controversy exceeded $10,-000.00, the hospital had the right to appeal the decision to the Provider Reimbursement Review Board (PRRB). The determination of that board became the final agency decision unless the Secretary, acting on her own, modified the decision. Judicial review of the PRRB decision was confined to the dictates of 42 U.S.C. § 1395oo (f)(1). Under this scheme, a district court could assume jurisdiction of Medicare claims only after the rendition of the PRRB decision. *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1024 (11th Cir. 1983).

In 1983, Congress changed the Medicare payment system from a retrospective to a prospective application. Hospitals are no longer reimbursed for their actual operating costs incurred in providing medical services. Instead, hospitals are paid pursuant to predetermined fixed rates which vary according to the type of service provided. 42 U.S.C. § 1395ww(d).[2] These rates, under the new Prospective Payment System

---

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The Secretary concedes that this court's decision in *Noland v. Heckler*, 762 F.2d 1561 (11th Cir.1985), is binding as to the issue of the invalidity of the Medical Malpractice Rule. Therefore, we need not address that part of the district court opinion which invalidated that Rule.

2. A small percentage of a hospital's costs, such as those related to capital expenditures and education, are still reimbursed under the old reasonable cost system. These expenses are not relevant to the issues before us.

(PPS), are a product of two numbers: the weight assigned by the Secretary to a "diagnosis related group" (DRG) and a national average cost of treating a Medicare patient. 42 U.S.C. § 1395ww(d)(3). A DRG is a grouping of comparable types of patients and illnesses whose cost of treatment is expected to be similar. The weight assigned to each DRG is multiplied by the national average rate to determine a hospital's payment for treating a patient falling within that DRG.

Because this new PPS system completely changed the method of reimbursing a hospital's Medicare costs, Congress established a transition period to lessen the "disruptions that might otherwise occur because of a sudden change in reimbursement policy." H.Rep. No. 98–25, 98th Cong. 1st Sess. p. 136 (1983), *reprinted at* (1983) U.S.Code Cong. & Ad.News 143, 355. During the transition period, the DRG weight is multiplied by two numbers: (1) a standardized national cost figure; and (2) a hospital-specific cost amount. These two products are then added together to form the hospital's prospective payment rate. For the first fiscal year under PPS, the hospital specific portion, multiplied by the DRG, comprises 75% of the total payment rate while the standardized national portion multiplied by the DRG forms 25% of the rate. The percentages are changed to 50% for the second PPS year and 25% and 75% respectively for the third year. After the third year, a hospital's payment rate is determined by multiplying the DRG solely by the standardized national cost figure.

The hospital-specific amount referred to above is based upon the allowable operating costs of hospital services for a certain year which is denominated as the base year. The base year for the appellees in this case was 1982. In order to determine the payment rates prospectively, the Secretary's fiscal intermediaries estimated each hospital's costs for the base year and divided that number by the total number of Medicare patients discharged to arrive at that hospital's average cost of treating a Medicare patient. This average was then adjusted to reflect estimated inflation during the transition period and to reflect the intermediary's estimate of a hospital's "case-mix" during that period. The figure derived from these estimates was then multiplied by the appropriate DRG to determine the hospital-specific portion of the hospital's payment rate for each DRG during the transition period.

At the end of each cost year during the transition period, a hospital submits cost reports to the fiscal intermediary. These reports include the number of Medicare patients discharged by the hospital during that year. This number is multiplied by the already-fixed prospective payment rates to determine a part of the hospital's reimbursement. The remaining reimbursement is made up of those costs that are reimbursed pursuant to the old reasonable cost system. *See* footnote 2, supra. The combination of the reimbursed reasonable costs and the prospective payments constitute the total amount due to a hospital and is issued by the intermediary in the form of an NPR.

Under the new prospective payment system, a hospital may obtain administrative review before the PRRB after the Secretary has made a "final determination ... as to the amount of payment under subsection (b) or (d) of section 1395ww." 42 U.S.C. § 1395oo (a)(1)(A)(ii). The Secretary takes the position that this statute provides for PRRB review only after a final NPR is issued for each year in the transition period. The plaintiffs argue that PRRB review is available after the prospective payment rates are determined regardless of whether an NPR has yet been issued.

The Secretary has issued a regulation, called the Base Year Regulation by the Secretary and the Prospective Relief Regulation by the plaintiffs, that is relevant to the issues in this case. This regulation, codified at 42 C.F.R. 412.72(a)(3), provides the following in pertinent part:

(i) The intermediary may adjust base period costs to take into account additional costs recognized as allowable costs for

the hospital's base year as the result of any of the following:

(D) An administrative or judicial review decision ... that is final and no longer subject to review under applicable law or regulations by a higher reviewing authority and that resolved a matter at issue in the hospital's base-year notice of amount of program reimbursement.

The regulations further provide that the adjustments to the hospital-specific rate "[w]ill be effective with the first day of the hospital's first cost reporting period beginning on or after the date of the ... review decision." 42 C.F.R. 412.72(a)(3)(ii)(A).

### Facts

The facts of this case are straightforward and undisputed. The plaintiffs-appellees are hospitals providing services to Medicare patients. They brought this action in 1984 claiming that the Secretary's Medical Malpractice Rule is invalid. This rule involves the Secretary's method of determining a hospital's reimbursement for malpractice insurance costs under the old retrospective reimbursement system. This rule was also used to determine the hospital's costs for the base year and therefore was also utilized to determine the appropriate prospective payment rates. The plaintiffs sought retrospective relief for their cost years beginning in 1981 and 1982 and prospective relief for their cost year beginning in 1985.[3] The plaintiffs have received NPRs for the years 1981 and 1982 but have not received an NPR for 1985.

As noted earlier, the district court found the Malpractice Rule invalid and the Secretary does not challenge that decision on appeal. The court remanded the case to the PRRB with instructions that the hospitals be reimbursed for their costs years already completed "using the method of reimbursement in effect prior to the effective date of the Malpractice Rule." Record Excerpts at 41. This relief is also not challenged by the government. The court

further directed the Secretary "to recalculate no later than March 31, 1985, the transition period prospective payment rate ... and to make the new rate effective on the first day of that hospital's next fiscal year." Id. The sole issue on appeal is whether the district court had jurisdiction to order prospective relief for 1985 when no NPR had yet been issued for that year.

### Discussion

The Secretary's position that a hospital cannot appeal an intermediary's rate decision to the PRRB until after the issuance of an NPR for the year in question is found in HCFAR–84–1, 49 Fed.Reg. 22413–15 (May 29, 1984). The Secretary's interpretation of a statute is entitled to deference and "should be followed unless there are compelling indications that it is wrong...." Callaway v. Block, 763 F.2d 1283, 1288 (11th Cir.1985). It is the court, however, that "has ultimate responsibility to construe Congress' language." United States v. Sarmiento, 750 F.2d 1506, 1507 (11th Cir.1985). Therefore, we have the obligation to carefully scrutinize the statutory language relating to Medicare reimbursement to determine whether the Secretary's interpretation of the Congressional scheme is reasonable.

42 U.S.C. § 1395oo (a)(1)(A)(i) and (ii) appear to set up two different avenues of appeal for hospitals receiving medicare payments. These provisions provide the following in pertinent part:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... and ... any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may

---

3. The plaintiffs have filed other lawsuits, which are currently pending, seeking review for their cost years beginning in 1983 and 1984. They do not explain why they brought separate lawsuits for those years.

obtain a hearing with respect to such payment by the Board, if—

(i) such provider is dissatisfied with a final determination of the ... fiscal intermediary pursuant to section 1395h[4] of this title as to the amount of total program reimbursement due the provider ... or

(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title.

The plain meaning of subsection (a)(1)(A)(i) is that a hospital may appeal to the PRRB a final decision by its fiscal intermediary as to the total amount of payment a hospital receives during a cost year. An intermediary's final decision is contained in the NPR. It is clear that the issuance of this NPR is a prerequisite to filing an appeal with the PRRB regarding the intermediary's final decision as to the *total payment* due a hospital during a given year.

The plaintiffs rely on Section (a)(1)(A)(ii) of 42 U.S.C. § 1395*oo* to support their position that the district court had jurisdiction to award prospective relief for 1985 as a result of the erroneous prospective payment rates. They claim that this section allows for the appeal of prospective payment rates regardless of whether an NPR has been issued for the year in issue. This argument, however, is not properly before us because the record clearly shows that the plaintiffs have pursued this action under 42 U.S.C. § 1395*oo* (a)(1)(A)(i) not (A)(ii). *See* Record on Appeal, Vol. III at 39. In fact, in its notice of related litigation filed in the district court, the plaintiffs stated the following:

The instant action for review of the intermediary's actions on certain cost reports was brought before the Provider Reimbursement Review Board pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(i).... The ac-

tion in the Northern District [another case brought by the plaintiffs] originated with [an] appeal to the Provider Reimbursement Review Board of the prospective payment pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(ii).

*Id.* at 70, fn. 1 (*See* also Record on Appeal, Vol. III at 118 where the plaintiffs again state that this case was brought under 42 U.S.C. 1395*oo* (a)(1)(A)(i) whereas the case they filed in the Northern District of Georgia was brought pursuant to section (A)(ii)).

The plaintiffs urge that we should treat this appeal as one brought under 42 U.S.C. § 1395*oo* (a)(1)(A)(ii). This argument has no merit. The plaintiffs initially filed suit under 42 U.S.C. § 1395*oo* (a)(1)(A)(i) alleging that the Medical Malpractice Rule was invalid and therefore their reimbursable payments for 1981 and 1982 under the old retrospective system were subject to alteration. Although they sought relief for 1985, they never relied on 42 U.S.C. § 1395*oo* (a)(1)(A)(ii) as a basis for that relief. In fact, they explicitly disavowed any reliance upon that section. *See Record on Appeal* Vol. III at 118–19. Moreover, the plaintiffs do not allege that they have ever asked the PRRB to alter their 1985 prospective payment rate. Absent such an allegation, even if we agreed with their interpretation of the statute, an issue we do not reach, we would not have jurisdiction to make that determination because regardless of which subsection of 42 U.S.C. § 1395*oo* (a)(1)(A) they rely on, it is clear that the plaintiffs must first exhaust their remedies before the PRRB. *See N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020 (11th Cir.1983). *See also* Plaintiff's Brief at 27 ("The Secretary is correct that the Medicare Act generally requires providers to exhaust their administrative remedies by seeking review by the PRRB").[5]

---

**4.** Section 1395(h) is the statute authorizing the use of fiscal intermediaries.

**5.** The plaintiffs insist that they have exhausted their administrative remedies because it is undisputed "that the Charter hospitals sought re-

view by the PRRB of the unlawful application by the Secretary of the Malpractice Rule to their base year periods." Plaintiff's Brief at 27. This argument misses the point. To have adequately exhausted before the PRRB, the plaintiffs would have to prove that they asked the PRRB to alter

The plaintiffs also claim that the district court had jurisdiction to award prospective relief for 1985 because the Secretary's regulations specifically permitted such relief. The plaintiffs point to the preamble to the Base Year Regulation (HCFAR 84-1) which provides the following:

> Insofar as a hospital seeks PRRB review of the intermediary's determination of the hospital's costs during the base year ..., the hospital may appeal to the PRRB following reaceipt [sic] of the NPR applicable to such year. If the hospital is successful in its appeal, its reimbursement for the base year will be adjusted accordingly and the hospital's *hospital specific payment rate will be adjusted beginning with the first day of the hospital's first cost reporting period on or after the hospital's successful appeal. Thus, as a practical matter, initiation of PRRB review of an intermediary's determination for which an NPR is issued for the ... base year will have the effect of appealing an intermediary's estimation of base year costs [but not including modifications thereto] before the conclusion of a hospital's first cost reporting period.*

49 Fed.Reg. 22414 (May 29, 1984) (emphasis added).

■ This language seems to indicate that a successful appeal of base year costs, which is also a successful appeal of the rate based on those costs, will result in an adjustment of the hospital specific portion of the payment rate beginning with the next fiscal year. This result is exactly the relief sought by the plaintiffs and ordered by the district court. The Secretary while admitting that she is bound by her own regulations, Reply Brief at 4, argues that the regulation in question does not help the plaintiffs because the "promulgation of regulations which allow *her* to change prospective payment rates before a final agency decision has been issued says nothing about a court's authority to make such changes.... [By] binding herself in this

way, *she has created in plaintiffs a substantive right to be reimbursed in accordance with the terms of the regulation....* But the regulation does not ... establish an independent right to judicial review...." *Id.* at 4-5. (Emphasis added). The Secretary seems to concede the plaintiffs' right to relief but contends that such relief cannot be granted in this forum. Although the Secretary's position is troublesome, we agree with her that the right to relief on the merits and the jurisdictional issues are separate. Therefore, the plaintiff's position that the district court had jurisdiction to award prospective relief under the Secretary's own regulations is without merit.

The plaintiffs also maintain that if the Secretary's interpretation of the jurisdictional scheme is correct, they will be denied any meaningful review for the transition period years. This argument centers around the Secretary's Prospective Relief Rule which provides that a final judicial or agency decision which alters the base-year cost assessment will be applied on "the first day of the hospital's first cost reporting period beginning on or after the date of the ... decision ... and [w]ill not be used to recalculate the hospital specific portion as determined for fiscal years beginning before the date of the ... decision." 42 C.F.R. § 412.72(a)(3)(i), (ii)). The plaintiffs claim that this prospective-relief-only regulation, combined with the requirement that hospitals must wait until the end of the fiscal year to initiate review of that year's rate, results in a system that never provides review for any of the transition period years. Such a system, according to the plaintiffs, clearly violates the Congressional intent to provide for appeals of the prospective payment rates.

The Secretary responds that the "established scheme of review allows plaintiffs to seek administrative and judicial review of the Secretary's decisions after a final agency decision as to the amount of payment due to plaintiffs' for 1985. If plaintiffs

---

their 1985 rates based on erroneous base year assessments and their interpretation of 42

U.S.C. § 1395*oo* (a)(1)(A)(ii). The plaintiffs have not, however, offered such proof.

prevail, they will be made whole: retrospective relief as well as interest is available." Reply Brief at 14. During oral argument, the Secretary harmonized this statement with the prospective-relief-only regulation by informing the court that the prospective-relief-only regulation applies only to appeals of the 1982 base year costs and not to "direct review" of each particular cost year. In other words, it is the Secretary's view that if a hospital can achieve a final court decision awarding it extra costs for its base year, the Secretary has agreed to apply that decision on a prospective basis to the next year in the transition period. The prospective-only part of that scheme, however, applies only to such base year appeals and does not extend to appeals taken after an NPR is issued for a given cost year. Based on this interpretation of the regulations, the Secretary reasons that the plaintiffs can receive full relief after an NPR is issued and have failed to show that they are prejudiced by the Secretary's interpretation of the statutory scheme.

▮ In light of the Secretary's concession that the plaintiffs are entitled to full retrospective relief once they receive an NPR for 1985, the plaintiff's argument that they will be denied all meaningful relief under the Secretary's interpretation of the jurisdictional scheme must fail. We do not express any opinion, however, as to what effect this concession concerning retroactive relief has on the plaintiffs' 42 U.S.C. § 1395oo (a)(1)(A)(ii) argument. We simply hold that the plaintiffs' contention that they will be denied all meaningful review of erroneous prospective payment rates under the present facts is without merit because they can seek retroactive correction of the damage caused by those rates under the Secretary's own interpretation of the jurisdictional scheme.

Finally, the plaintiffs maintain that the district court had mandamus jurisdiction under 28 U.S.C. § 1361 to order prospective relief. This position, however, is based on the plaintiffs' claim that the Secretary's regulations deprive them of any review of the prospective payment rates. As we noted earlier, the plaintiffs are entitled to full retroactive relief for any damages caused by erroneous prospective payment rates. Consequently, there is no basis for mandamus jurisdiction under 28 U.S.C. § 1361.

In summary, the plaintiffs advanced four reasons in support of the district court's jurisdiction to award prospective relief for 1985 even though no NPR had yet been issued for that year. First, they claimed that 42 U.S.C. § 1395oo (a)(1)(A)(ii) expressly allows such relief. As previously stated, this contention is not properly before us because the record shows that this appeal does not deal with § 1395oo (a)(1)(A)(ii). Rather, as the plaintiffs consistently advised the district court, this case challenges the Medical Malpractice Rule pursuant to 42 U.S.C. § 1395oo (a)(1)(A)(i). Second, the plaintiffs contended that the Secretary's own regulations authorized the district court to order prospective relief. Although these regulations seem to guarantee the plaintiffs the relief they seek once jurisdiction is properly invoked, see page 734, *supra,* they do not provide the jurisdictional basis necessary to support the court's decision. Third, the plaintiffs argued that they will be denied all meaningful review of the prospective payment rates under the Secretary's interpretation of the jurisdictional framework. There is no merit to this contention because the Secretary has conceded that full retroactive relief including interest is available to the plaintiffs for each year in the transition period once NPR's are issued for those years. Finally, the plaintiffs sought the aid of the district court under the Mandamus statute, 28 U.S.C. 1361. In the face of the Secretary's concession regarding the availability of retroactive relief, this effort must also fail.

We find that there is no basis in the present record to support the district court's exercise of jurisdiction to order relief for 1985.[6] Accordingly, its decision

---

6. Because of this holding, we need not address the district court's decision to invalidate that part of the Base Year Regulation which conflicted with its order.

directing the Secretary to alter the payment rates for 1985 is REVERSED.