EPISCOPAL HOSPITAL, et al.

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services.

Civ. A. No. 86–0626.

United States District Court, E.D. Pennsylvania.

Sept. 25, 1986.

Robert M. McNair, Jr., Jennifer A. Stiller, Philadelphia, Pa., for plaintiffs.

Virginia Powell, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Although this case arises in a complex statutory and regulatory framework, it presents a single straightforward legal issue: when may a provider of medical care under the Medicare program obtain administrative review of the decision of the Secretary of Health and Human Services (the "Secretary") which determines the rate of hospital-specific payments under the recently established Prospective Payment System ("PPS"). The plaintiffs in this case are seven Philadelphia area hospitals, and the defendant is the Secretary of Health and Human Services, Dr. Otis R. Bowen. The Secretary has delegated responsibility for administration of the Medicare Program to the Health Care Financing Administration ("HCFA"). Each of the seven plaintiffs is a Medicare provider. Each sought to appeal to the Provider Reimbursement Review Board ("PRRB" or "the Board") the decision of its fiscal intermediary[1] concerning the treatment of certain costs attributable to medical care. *See* Administrative Record at 7–11. Pursuant to regulations and a ruling of the HCFA, the PRRB declined the plaintiffs' request to hear the appeal, asserting that the Board lacked jurisdiction as the appeal was premature. Administrative Record at 1–6.

Plaintiffs appeal to this Court the Board's refusal to assert jurisdiction over the administrative appeal. The Secretary has now moved to dismiss plaintiffs' complaint. For the reasons elaborated below, I conclude that the PRRB's refusal to assert jurisdiction over the administrative appeal, and the regulations and rulings upon which that refusal was based, are contrary to the Medicare statute as amended. As a result, I will deny the defendant's motion to dismiss. I note that this Court has jurisdiction over the case and the parties. *See* 42 U.S.C. § 1395oo(f)(1).

1. *Statutory and Regulatory Framework*

a. *The Cost Reimbursement System*

In 1965 Congress enacted the Medicare program as Title XVIII of the Social Security Act, which is codified at 42 U.S.C. § 1395 *et seq.* Pub.L. No. 89–97, § 102(a). Medicare provides a system of health insurance for the aged and disabled.

For cost reporting years beginning prior to October 1, 1983, Medicare reimbursed the "reasonable cost" of inpatient hospital services furnished to Medicare patients. 42 U.S.C. § 1395f(b). The Medicare Act defines "reasonable cost" as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act requires the Secretary through regulation to reimburse "both direct and indirect costs...." 42 U.S.C. § 1395x(v)(1)(A).

The Secretary has contracted out many of his audit and payment functions under the Medicare program to fiscal intermediaries. *See* note 1, *supra,* at 1. After the close of a fiscal year, a hospital must submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate portion of those costs to be apportioned to Medicare. 42 C.F.R. §§ 405.406(b) (1982) and 405.453(f) (1982); *Athens Community Hospital, Inc. v. Schweiker,* 686 F.2d 989, 991 (D.C.Cir.1982). The intermediary is required to analyze and audit the cost report and to issue a notice of amount of program reimbursement ("NPR"). 42 C.F.R. § 405.1803(a) (1982). If a hospital is dissatisfied with the determination of its intermediary, it is entitled to file a request for a Board hearing within 180 days of the issuance of the NPR. 42 U.S.C. § 1395oo(a)(1)(A) (1982).

b. *The Prospective Payment System*

In 1983, Congress enacted major changes in the method of paying hospitals under the Medicare program, effective for cost re-

---

**1.** A fiscal intermediary is a private entity, usually an insurance company, which is an agent of the Secretary and which is required to analyze and audit the cost report of the provider and to issue a notice of amount of program reimbursement ("NPR"). 42 CFR § 405.1803(a) (1982).

porting periods beginning on or after October 1, 1983. Under the new legislation, Medicare continues to reimburse certain costs—principally medical education, capital, and outpatient service costs—on a "reasonable cost" basis. 42 U.S.C. § 1395ww(a)(4). However, it pays most hospitals, including the plaintiffs, for most inpatient operating services not on the basis of their "reasonable costs" during the cost reporting year (as in the past) but on the basis of prospectively determined rates. *See generally* 42 U.S.C. § 1395ww(d).

Under the prospective payment system ("PPS"), Medicare will ultimately pay all hospitals for inpatient operating services based on a standard national rate for each of approximately 471 diagnosis related groups ("DRGs"). 42 U.S.C. § 1395ww(d)(1)(A)(iii). However, the Act provides for a four-year transition period [2] during which a hospital's payment amount will be a blend of two components: a "target amount" (or, in the terminology of the regulations, a "hospital-specific portion") and a "DRG prospective payment rate" (or, in the terminology of the regulations, a "Federal portion").[3] 42 U.S.C. § 1395ww(d)(1)(A)(i)–(ii); 42 C.F.R. § 412.70 (1985). The "target amount" is the amount of a particular hospital's allowable inpatient operating costs per discharged patient for an historic cost reporting year (known as the "base year"), updated by an inflation factor. 42 U.S.C. § 1395ww(d)(1)(A)(i)(I), incorporating by reference 42 U.S.C. § 1395ww(b)(3)(A). The "DRG prospective payment rate" is a standard amount determined either on a national or a regional basis for each DRG. *See generally* 42 U.S.C. § 1395ww(d)(2) (applicable to the first PPS year) and 42 U.S.C. § 1395ww(d)(3) (applicable to subsequent PPS years). Both components of the

---

**2.** The 1983 PPS amendments, Pub.L. No. 98–21, provided for a three-year transition period, as described in the complaint and in the defendants' memorandum of points and authorities. On April 7, 1986, the President signed into law Pub.L. No. 99–272, which, among other things, extended the transition period generally for an additional year.

**3.** For the first year of PPS (which, for plaintiffs, was the year ended June 30, 1985), the blend was 75% "hospital-specific portion" and 25%

PPS payment amount are determined prior to the beginning of a hospital's PPS year. *See* (with respect to the "target amount") 42 C.F.R. § 405.474(b)(1)(iv)–(v) (1983), 42 C.F.R. § 412.71(d) (1985) and (with respect to the "DRG prospective payment rate") 42 U.S.C. § 1395ww(d)(6), 42 C.F.R. § 412.8 (1985). 50 Fed.Reg. 3547 (Sept. 3, 1985).

### c. *PPS Appeals to the Board*

The 1983 legislation substantially amended 42 U.S.C. § 1395oo(a), which governs the initiation of administrative Medicare appeals, to conform with the major change in Medicare payment effected by PPS. The statute as amended now reads in pertinent part as follows:

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") ... and ... <u>any hospital which receives payments in amounts computed under [the PPS] and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board,</u> if
>
> (1) such provider—
>
> (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, or

---

"Federal portion." *See* 42 U.S.C. § 1395ww(d)(1)(C)(i). For the second PPS year (that ending June 30, 1986) it is 50% "hospital-specific" and 50% "Federal." *See* 42 U.S.C. § 1395ww(d)(1)(C)(ii). For the third PPS year (ending June 30, 1987), it is 45% "hospital-specific" and 55% "Federal;" for the fourth PPS year (ending June 30, 1988), the blend is 25%/75%. *See* 42 U.S.C. § 1395ww(d)(1)(C)(iii) and (iv).

(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under [the PPS],

\*   \*   \*   \*   \*   \*

(2) the amount in controversy is $10,-000 or more, and

(3) Such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i), or with respect to appeals under paragraph (I)(A)(ii), 180 days after notice of the Secretary's final determination. . . .

The language added by the 1983 PPS amendments is underlined. Relying on the new statutory language, a number of hospitals filed appeals with the Board as soon as they received a final determination of the target amount from their intermediaries. The Board held that it had immediate jurisdiction over 31 of these appeals. *See Medical Center Hospital v. Heckler,* CCH Medicare and Medicaid Guide ¶ 34, 920 (M.D.Fla. Sept. 23, 1985) at 9523.

On May 29, 1984, the Secretary issued HCFA Ruling 84-1 ("HCFAR 84-1"), which reversed the Board's jurisdictional position. 49 Fed.Reg. 22413–22415. The ruling provides as follows:

*Provider Reimbursement Review Board jurisdiction over appeals from estimation of and modifications to base year costs under the prospective payment system.* It is HCFA's ruling that an intermediary's estimation of a hospital's base year costs and modification made thereto, made for purposes of determining the hospital-specific rate under PPS [HCFA Form 1007] is neither a final determination of program reimbursement nor a notice of amount of program reimbursement [NPR] as required by the statute and regulations. Accordingly, the PRRB has jurisdiction to review an intermediary's modifications to base year costs, made for the purpose of implementing the prospective payment system, or the estimate of those costs as stated on HCFA form 1007, only after an NPR has been issued for the hospital's first cost reporting period under the prospective payment system.

The Secretary adopted HCFAR 84-1 in order to avoid piecemeal appeals and multiplying litigation. Under the ruling, a hospital may not initiate a PPS appeal until after it has completed its first PPS fiscal year, filed a cost report, and received an NPR from its intermediary; in other words, it must meet the exact same conditions for a PPS appeal as for a cost reimbursement appeal. According to plaintiffs, the practical effect of the ruling is to preclude a hospital from appealing its prospectively-determined PPS rate until approximately two and a half to three years after the beginning of a PPS year.

Judicial review of the actions of the Secretary in this case is governed by 42 U.S.C. § 1395*oo*(f), which in turn refers to the Administrative Procedure Act section 706, Title 5 U.S.C. A court is bound to uphold a decision of the Secretary unless that decision is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence in the record taken as a whole. *See, e.g., Humana, Inc. v. Heckler,* 758 F.2d 696, 698–99 (D.C.Cir. 1985). As a result, agency interpretations of law are accorded a degree of deference by the courts. *Office of Communication of United Church of Christ v. Federal Communication Commission,* 707 F.2d 1413, (D.C.Cir.1983). But "[i]f the intent of Congress is clear that is the end of the matter." *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). *See Washington Hospital Center v. Bowen,* 795 F.2d 139, 143 (D.C. Cir.1986), affirming *Tucson Medical Center v. Heckler,* 611 F.Supp. 823 (D.D.C. 1985). The Supreme Court recently pointed out:

[D]eference is not to be a device that emasculates the significance of judicial review. Judicial deference to an agency's interpretation of a statute "only sets 'the frameword for judicial analysis; it does not displace it.'" A reviewing court 'must reject administrative construction of [a] statute, whether reached by adjudication or by rule-making, that

are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. (citations omitted).

*Securities Industry Association v. Board of Governors of the Federal Reserve System*, 468 U.S. 137, 142–43, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107, 113 (1984).

### 2. Discussion

Having considered the arguments of both sides and the law cited by each, and despite the deference accorded agency interpretations of the statutes which they administer, I conclude that HCFAR 84–1 is inconsistent with section 1395oo(a), and thus contrary to law.[4] "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The amended section 1395oo(a), quoted at length above, appears to establish a two channel system of appeals to the PRRB[5]: one for providers "dissatisfied ... as to the amount of total program reimbursement due the provider," § 1395oo(a)(1)(A)(ii), and a second for providers "dissatisfied with a final determination of the Secretary as to the amount of payment under [PPS],"

§ 1395oo(a)(1)(A)(ii). The first administrative appeal process begins when the intermediary issues an NPR; and the second, when the intermediary issues a notice of payments under PPS.

The language of section 1395oo(a) which antedated the 1983 amendments clearly applied to the conditions under which a provider may pursue an administrative appeal for cost reimbursement. There is no dispute that the same language continues to govern such appeals. "Any provider ... which has filed a required cost report ... may obtain a hearing with respect to such cost report ... if (1) such provider (A)(i) is dissatisfied with a final determination ... as to the amount of total program reimbursement due the provider...." A hospital must file a cost report in order to obtain a final determination of reimbursements due, also known as an NPR. There simply is nothing to appeal until the NPR issues.

By contrast, the statute also provides that a PPS appeal is triggered by a different event. "[A]ny hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title [the PPS] and which has submitted such reports ... as the Secretary may require in order to make payments under such section may obtain a hearing with

---

**4.** One Court of Appeals and numerous District Courts have held that HCFAR 84–1 does not comport with 42 U.S.C. § 1395oo(a). *Washington Hospital Center v. Bowen*, 795 F.2d 139 (D.C. Cir.1986), *aff'g, Tucson Medical Center v. Heckler*, 611 F.Supp. 823 (D.D.C.1985); *Redbud Hospital District v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,085 (N.D.Ca. July 30, 1984) [Available on WESTLAW, DCTU database]; *Sunshine Health Systems, Inc. v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,858 (C.D.Ca. Apr. 10, 1985), *appeal docketed*, Nos. 85–6011 and 85–6368 (9th Cir.); *Doctors General Hospital, Inc. v. Heckler*, 613 F.Supp. 1036 (S.D.Fla. 1985), *appeal docketed*, No. 85–5963 (11th Cir.); *Greenville Hospital System v. Heckler*, 642 F.Supp. 15, CCH Medicare and Medicaid Guide ¶ 34,832 (D.S.C.1985), *appeal dismissed*, No. 85–1860 (4th Cir. Dec. 18, 1985); *Medical Center Hospital v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,920 (M.D.Fla. Sept. 23, 1985); *St. Francis Hospital v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,918 (S.D. W.Va. Sept. 30, 1985); *Good Samaritan Hospital v. Heckler*, No. CV 84–L–459, slip op. (D.Neb. Oct. 31, 1985 and Dec. 20, 1985); *North Broward Hospital District v. Heckler*, No. 85–6185–CIV–

KING (S.D.Fla. Nov. 26, 1985), *appeal docketed*, No. 86–5201 (11th Cir); *City of Lincoln v. Heckler*, No. CV85–L–338 (D.Neb. Dec. 26, 1985); *Providence Hospital, Inc. v. Bowen*, No. C85–7999 (W.D.Ohio Feb. 13, 1986); *Springdale Memorial Hospital v. Heckler*, No. 85–5066 (W.D. Ark. Apr. 14, 1986) [Available on WESTLAW, DCTU database].

The only case siding with the Secretary of which I am aware is readily distinguishable. In *Charter Medical Corp. v. Heckler*, 788 F.2d 728 (11th Cir.1986), the court held that because plaintiffs proceeded under § 1395oo(a)(1)(A)(i) and not § 1395oo(a)(1)(A)(ii), they failed to exhaust administrative appeals and consequently the judicial appeal would not be permitted. It is precisely the effect of section 1395oo (a)(1)(A)(ii), the section not reached in *Charter Medical*, which is raised in the instant case.

**5.** Even *Charter Medical*, which refused the provider's request for relief for failure to exhaust administrative appeals, so concluded, albeit in dicta. *Charter Medical, supra*, 788 F.2d at 732. *See also Washington Hospital Center, supra*, 795 F.2d at 145.

respect to such payment ... if (1) such provider—(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww...." By the very nature and intent of the prospective payment system [PPS], such payments are to be determined prior to the commencement of the year in which PPS payments are generated. Consequently, the NPR generated through application under a cost reimbursement system is irrelevant to PPS payments. Indeed, it is inconsistent with the operation of a prospective payment system.

The Secretary claims that the phrase "amount of payments" in section 1395oo (a)(1)(A)(ii) precludes review until the NPR is issued, following the year in which PPS services are provided. He argues that the PPS determination preceeding the hospitals receipt of payments—which is grounded in base year costs—only gives the hospital the rate of payment per discharged patient, and not the total payments it will receive. "Review is only available from 'a final determination of the Secretary as to the total *amount* of the payment.' A rate is simply not an amount." Defendant's Memorandum of Points and Authorities at 20 (footnote omitted). I agree with the conclusion of Judge Anderson in *Greenville Hospital System, supra,* 642 F.Supp. at 20, ¶ 34,832 at 9174, that this is "a 'hypertechnical construction' of the statute which is contrary to the notion of a prospective payment system." (Citation omitted.) Judge Anderson continued:

> [t]he amount of the payment for each discharge is determined before the year begins. The only additional information that is known at the end of the year is how many many discharges the hospital made and to which DRG each discharge was assigned during the year. But that number in no way affects the amount the hospital receives for each discharge.

*Id. See also* C.F.R. § 405.454(m). Furthermore, Congress has defined the "amount of payment" in § 1395ww(d)(1)(A) in terms of the payment per discharged patient under the PPS, and not in terms of the aggregate yearly payment. The Secretary's argument thus is inconsistent with the definition of the term as referenced in § 1395oo (a)(1)(A)(ii).

The Secretary also argues that the intermediary's determination of PPS rate is not a "final decision." The intermediary's decision as to a provider's PPS rate constitutes a "final determination" as that term is used in § 1395oo(a)(1)(A)(ii) and in 42 C.F.R. § 412.72(d)(1985). The conclusion to the contrary contained in HCFAR 84–1 is inconsistent with the Secretary's own regulations.

Finally, HCFAR 84–1 renders the amendments to § 1395oo(a) mere surplusage. As the *Washington Hospital* Court observed "[t]o accept the Secretary's interpretation we must assume that Congress added sixty words to the opening paragraph of § 1395 oo(a) for no reason at all. This we cannot do consistently with our obligation to construe a statute so as 'to give effect, if possible, to every word Congress used.' *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 [99 S.Ct. 2326, 2331, 60 L.Ed.2d 931] (1979)."

For all these reasons, I conclude that HCFAR 84–1 is inconsistent with the statute governing the PRRB's jurisdiction over administrative appeals. The Secretary's motion to dismiss must therefore be denied. Furthermore, because this issue is the sole issue presented in this case, judgment will be entered for the plaintiffs.

An appropriate order follows.

## ORDER

AND NOW, this 25 day of September, 1986, it is hereby Ordered that defendant's motion to dismiss is DENIED. Judgment is entered in favor of the plaintiffs and against the defendant.

It is further Ordered that Health Care Financing Administration Ruling 84–1 violates 42 U.S.C. § 1395oo(a) and is therefore declared invalid; that the Provider Reimbursement Review Board has jurisdiction to hear the plaintiffs' appeals concerning their base year costs and payment amounts under the prospective payment system prior to the issuance of a notice of program

**18**

reimbursement for their first fiscal year under the prospective payment system; and that this case is hereby REMANDED to the Provider Reimbursement Review Board for proceedings consistent with this Order and the attached Memorandum.

AND IT IS SO ORDERED.