**DOCTORS HOSPITAL, INC. OF PLANTATION, a Florida not for profit corporation, Plaintiff-Appellee,**

**v.**

**Otis R. BOWEN, in his official capacity as Secretary of the United States Department of Health and Human Services, Defendant-Appellant.**

**MEDICAL CENTER HOSPITAL, Plaintiff-Appellee,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellant.**

**NORTH BROWARD HOSPITAL DISTRICT, a Special Tax District of the State of Florida, d/b/a North Broward General Medical Center, and Imperial Point Medical Center, Plaintiffs-Appellees,**

**v.**

**Otis R. BOWEN, in his official capacity as Secretary of the U.S. Department of Health and Human Services, Defendant-Appellant.**

**SOUTHEASTERN PALM BEACH COUNTY HOSPITAL DISTRICT, Plaintiff-Appellee,**

**v.**

**Otis R. BOWEN, Defendant-Appellant.**

**Nos. 85–5963, 86–3026, 86–5021 and 86–5087.**

United States Court of Appeals, Eleventh Circuit.

March 9, 1987.

Leon B. Kellner, U.S. Atty., Linda Collins-Hertz, Asst. U.S. Atty., Miami, Fla., Alfred R. Mollin, U.S. Dept. of Justice, Civil Div., Appellate Staff, Gerard Keating, Dept. of Health & Human Services, Office of the General Counsel, Washington, D.C., for Otis R. Bowen.

Richard C. Klugh, Jr., Michael W. Ford, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for Doctors Hosp., Inc.

of Plantation and Southeastern Palm Beach County Hosp. Dist.

Carel T. Hedlund, Leonard C. Homer, Ober, Kales, Grimes & Shriver, Baltimore, Md., for Medical Center Hosp.

Jennifer Scott, Michael W. Ford, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for North Broward Hosp. Dist.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The Secretary of Health and Human Services (the Secretary) appeals the district courts' rulings allowing hospitals to obtain administrative review of their reimbursement rates for Medicare services because such rate determinations constitute final decisions within the meaning of the Medicare statute. We affirm.

## Background

In 1965, Congress enacted the Medicare statute which provides a system of health insurance for the aged and disabled. 42 U.S.C. § 1395. In 1983, Congress created a Prospective Payment System (PPS) which "completely changed the method of reimbursing a hospital's Medicare costs...." *Charter Medical Corp. v. Bowen*, 788 F.2d 728, 731 (11th Cir.1986). For cost reporting years beginning prior to October 1, 1983, participating hospitals were reimbursed for the actual "reasonable costs" of in-patient hospital services furnished to Medicare patients. Under the PPS, hospitals are to be reimbursed a fixed amount for each patient treated, regardless of the actual cost of treatment. By enacting the PPS, which applies to all but a few limited classes of hospitals and limited types of costs, Congress sought "to reform the financial incentives hospitals face, promoting

efficiency in the provision of services by rewarding cost/effective hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132, *reprinted in* 1983 U.S. Code Cong. & Ad.News 143, 219, 351. By informing hospitals in advance of the payments they will receive per patient for various types of treatment, Congress thus sought to induce hospitals to lower actual costs in treating patients. *Washington Hosp. Center v. Bowen,* 795 F.2d 139, 142 (D.C.Cir.1986).

Under the PPS, Medicare will ultimately pay hospitals for in-patient operating services based on a standard national rate for each of approximately 470 diagnoses-related groups (DRG's). A DRG is a grouping of comparable types of patients and illnesses whose cost of treatment is expected to be similar. 42 U.S.C. § 1395ww(d)(1)(A)(ii-i). Each DRG is assigned a weight which varies with the severity of the illness. This number is then multiplied by one specific dollar figure which represents the national average per patient cost of medical treatment. Congress provided for a four-year "phase-in period to minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy." H.R.Rep. No. 25 at 136, *reprinted in* 1983 U.S. Code Cong. & Ad.News at 355. During this phase-in period, the dollar figure portion of the PPS payment formula is to be based on a blend of two components: a "hospital-specific rate" based on the hospital's actual cost during a designated "base year" and a standardized national cost figure. This average cost of treatment in the base year is adjusted upwards based for various factors including the Secretary's estimates of anticipated inflation. 42 C.F.R. § 412.71(a). Over the course of the transition period, the proportion of the payment based upon the hospital's costs decreases until it is finally eliminated, while the proportion based on the national figure increases accordingly. 42 U.S.C. § 1395ww(d)(1)(C).

Because of time constraints imposed by Congress, in order for the transition period rates to be permanently fixed before hospitals began providing services, it was necessary for the Secretary to make the relevant calculations at the outset of the transition period. This required the final decisions to be made on the basis of estimates, including estimates of a hospital's allowable reimbursement cost for a base year, in most instances the 1982 cost year. In making this determination, the Secretary relied upon the 1982 cost reports submitted by the hospitals. At this time, these cost reports had been audited, but they had not been subjected to administrative and judicial review. *See* 48 Fed.Reg. 39772 (Sept. 1, 1983).

Appellees are hospitals providing services to Medicare beneficiaries. Medical Center Hospital objects to the Secretary's classification of it as a "rural hospital" which subjects it to lower national rates in determining its reimbursement amounts than if it were classified as an urban hospital. The other three hospitals contest the Secretary's determination of their hospital-specific rates, contending that the rate decisions of the Secretary underestimated the allowable cost for the base year. Each hospital sought administrative review of these decisions before the Provider Reimbursement Review Board (PRRB). In each case, the Board denied the request holding that review was premature.

In the district court, each hospital sought judicial review of these denials, and the district court reversed the Board's decisions and remanded the cases to the Board with instructions to grant the requested hearings. In all four cases, the hospitals sought review from the PRRB during their first year under the PPS.[1]

## Discussion

The Secretary contends that the appeals were premature arguing that Congress created a method which provides for a single

---

**1.** In *Southeastern Palm Beach Hospital District* and *North Broward Hospital District,* appellee's motion to dismiss the Secretary's appeal on the grounds the appeal was premature was carried with the case. These motions are denied.

year-end appeal of any disagreement a hospital may have about its reimbursement for a given year. The Secretary thus argues that the hospitals must wait until the proper time for contesting the dollar amount of reimbursement for a given year before raising any claim about the applicable rates.

The hospitals contend that Congress provided for two separate systems of review in enacting the PPS. The method of review allowed under the old system, and carried over to the new, provides for review at the end of the year of the actual amount of reimbursement a hospital is to receive after compliance with a series of prerequisites. Review is triggered when a fiscal intermediary, such as Blue Cross, issues a Notice of Program Reimbursement (NPR), which is tabulated after a hospital submits all its costs for a cost year for which it seeks reimbursement.

The hospitals argue that Congress has provided for a separate system for review of the Secretary's determination of the rates at which hospitals are to be reimbursed.

When Congress enacted PPS, it simultaneously amended the Medicare statute to incorporate provisions for administrative and judicial review of the Secretary's actions in setting the predetermined PPS rates. It did this, in part, by adding the following underlined portions to 42 U.S.C. § 1395oo (a):

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the 'Board') ... *and ... any hospital which receives payments in amounts computed under [PPS] and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board,* if
>
> (1) such provider—

> (A)(*i* ) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, *or*
>
> *(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection ... (d) of section 1395ww of this title [i.e., PPS],*
>
> (2) the amount in controversy is $10,000 or more and
>
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(*i* ), *or with respect to appeals under paragraph (1)(A)(ii), 180 days after notice of the Secretary's final determination....*

The Secretary's interpretation of this section, embodied in Health Care Financing Administration Ruling (HCFAR) 84–1, is that the PPS provides for review only upon "a final determination of the Secretary as to the amount of the payment under [PPS]." This triggering, "final determination" can occur only at year's end after an NPR has been issued. The Secretary's justification for this interpretation is that the "amount of payment" due under the prospective payment system includes reimbursement for capital costs, which cannot be calculated until the hospital submits its cost report at the end of the year, as well as prospective payments for operating costs, the total amount of which cannot be finally determined until year's end.

The Secretary argues that its interpretation of the statute is entitled to substantial deference, citing *Memorial Hospital v. Heckler,* 706 F.2d 1130, 1134 (11th Cir. 1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). We are mindful, however, that deference to an agency's interpretation is inappropriate if that interpretation is "inconsistent with the statutory mandate or frustrate[s] the policy that

Congress sought to implement." *Securities Industry Association v. Board of Governors of the Federal Reserve System*, 468 U.S. 137, 143, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107, 113 (1984) (quoting *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)).

■ This is an issue of first impression in this circuit. This court, however, has noted that "42 U.S.C. § 1395*oo* (a)(1)(A)(i) and (ii) appear to set up two different avenues of appeal for hospitals receiving medicare payments." *Charter Medical Corp. v. Bowen*, 788 F.2d 728, 732 (11th Cir.1986). Two other circuits have addressed this issue and have found that the Secretary's interpretation is in contravention of the plain language of this section. *Washington Hosp. Center v. Bowen*, 795 F.2d 139 (D.C.Cir.1986); *St. Francis Hosp. v. Bowen*, 802 F.2d 697 (4th Cir.1986). We find the reasoning employed in both circuits persuasive and reach the same conclusion.[2]

Section 1395*oo* (a) "clearly contemplates two different kinds of appeals. One begins when the intermediary issues an NPR; the other when the intermediary issues a notice of what will be paid under the PPS system." *Washington Hosp. Center* at 145 (quoting *Tucson Medical Center v. Heckler*, 611 F.Supp. 823 (D.D.C.1985)). The Secretary argues that the PPS rates are not determinations concerning the "amount of the payment," but are merely preliminary decisions that determine some of the elements of the formula that will eventually be used to determine a portion of the actual payments to which a hospital will be entitled. The Secretary concludes that review is not proper until an NPR is issued for a given year.

We disagree. Clearly, an NPR is necessary for a hospital to contest the actual dollar amount of reimbursement, for prior to its issuance, no indication appears as to whether all the costs submitted will be recouped. An appeal on these grounds would be made under 42 U.S.C. § 1395*oo* (a)(1)(A)(i). An NPR, however, would serve no purpose whatsoever in reviewing PPS rates assigned by the Secretary, because the actual costs incurred during a given year are irrelevant. A PPS appeal can be commenced at the beginning of a PPS year. "By adding subsection (1)(A)(ii), which contains no reference to NPR's, Congress expressed its clear intention to change the prerequisites for PPS appeals." *Washington Hosp. Center* at 146. Furthermore, to accept the Secretary's proffered interpretation would reduce the 1983 amendments to section 1395*oo* (a) to mere surplusage, and would violate the canon of statutory construction of giving effect, when possible, to every word Congress employs. *Washington Hosp. Center* at 145. Congress clearly did not intend that the appeal mechanism for the cost reimbursement system be imposed upon the new prepayment system. The Secretary's interpretation effectively collapses two distinct reviewing schemes into one.

■ The hospitals contend, and the other courts which have addressed this issue agree, that the phrase "the amount of the payment" is defined in 42 U.S.C. § 1395ww(d)(1)(A), which is referred to in section 1395*oo* (a), to mean the PPS rate per discharge set prior to the beginning of each PPS year.[3] A presumption is made that the same words used in different parts of an act have the same meaning. *Yamaguchi v. State Farm Mutual Automobile Insurance Co.*, 706 F.2d 940, 947 (9th Cir.

---

**2.** No district court has accepted the Secretary's view.

**3.** For the first PPS year, section 1395ww(d)(1)(A)(i) defines "the amount of the payment" as:

    (I) The target percentage (as defined in subparagraph (C)) of the hospital's target amount for the cost reporting period (as defined in subsection (b)(3)(A) of this section, but determined without the application of subsection (a) of this section), and

    (II) the DRG percentage (as defined in subparagraph (C)) of the regional adjusted DRG prospective payment rate determined under paragraph (2) for such discharges[.]

1983). The Secretary presents no persuasive evidence to supplant this presumption.

We further find compelling that the "plain meaning" reading of the statute is consistent with the legislative history of the 1983 amendments. In order to fulfill the primary purpose of the Act in providing hospitals with predictability regarding payment amounts and to reform the financial incentive hospitals face, a hospital needs to know in advance how much it will receive under the PPS system during the transition period. To accept the Secretary's interpretation of the amendments would require an indeterminable wait before the rates could be appealed, and thus would add further uncertainty to the reimbursement procedure. The Secretary's interpretation thus frustrates the policy that Congress sought to implement.

### Conclusion

In conclusion, we find that HCFAR 84–1 is contrary to congressional intent as expressed in the language in the legislative history of the 1983 amendments to section 1395*oo* (a). Once a final determination is made as to the applicable hospital-specific amount, a final determination may be made as to the amount of payment as required by section 1395*oo* (a)(1)(A)(ii). Hospitals, therefore, need not wait until a NPR has been issued to challenge the hospital-specific portion of the transition period PPS rates. The PRRB erred in refusing jurisdiction over the hospitals' claim.

The orders of the district courts are accordingly affirmed.

AFFIRMED.