802 F.2d 697
 15 Soc.Sec.Rep.Ser. 185, Medicare&Medicaid Gu 35,881
ST. FRANCIS HOSPITAL, Appellee,
v.
Otis R. BOWEN in his official capacity as Secretary of the
United States Department of Health and Human
Services, Appellant.
Greenville Hospital System, Amicus Curiae.
 No. 85-2285.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 17, 1986.
Decided Oct. 1, 1986.
 
 Alfred Mollin, Atty., Civil Div., Appellate Staff, Dept. of Justice (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., David A. Faber, U.S. Atty., Charleston, W. Va., John F. Cordes, Atty., on brief), Richard E. Robertson, Gen. Counsel, Ann T. Hunsaker, Asst. Gen. Counsel, David R. Smith, Atty. Dept. of Health and Human Services Washington, D.C., for appellant.
 Michael W. Ford (Mershon, Sawyer, Johnston, Dunwody & Cole, Richard C. Klugh, Jr., Jennifer L. Scott, Miami, Fla., on brief), for appellee.
 Leonard C. Homer, Carel T. Hedlund, Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief, for amicus curiae Greenville Hosp. System.
 Before RUSSELL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 The Secretary of Health and Human Services ("Secretary") appeals from a district court order invalidating Health Care Financing Administration Ruling ("HCFAR") 84-1, 49 Fed.Reg. 22,413 (1984), and awarding additional Medicare funds to plaintiff, St. Francis Hospital ("Hospital"). Under HCFAR 84-1, hospitals receiving Medicare payments under the new Prospective Payment System ("PPS") are required to wait until a year ends and the Notice of Program Reimbursement listing total Medicare payments for that year is issued before appealing the predetermined rate at which they receive Medicare payments. Because HCFAR 84-1 conflicts with the plain language of the statutory scheme and the legislative intent of PPS, we affirm the district court's decision to strike it down. However, we reverse the district court's award of monetary relief to the hospital because it has failed to exhaust administrative remedies on the merits of its claim.
 
 I.
 
 2
 Under the PPS system, the overwhelming proportion of Medicare payments to hospitals are calculated using a fixed rate, weighted according to the severity of a patient's illness. These PPS payments are received by hospitals throughout the year, and are based either on actual discharges or on estimates of the numbers and weights of a hospital's cases. PPS payment rates are fixed in advance and are not affected by the actual costs incurred by a hospital during the payment year. Reasonable cost reimbursement, which was the keystone of the Medicare system prior to the creation of PPS in 1983, survives only with respect to limited classes of hospitals or limited types of costs. None of these cost-based reimbursements are at issue in this appeal.
 
 
 3
 In order to ease the transition from the old cost-based system to PPS, Congress provided for a transition period from 1984 to 1987. In those transition years, the rate used to calculate Medicare payments is a combination of a uniform national rate and a hospital-specific rate.[1] A hospital-specific rate is set using a hospital's actual costs for the "base year," 1982, adjusted for factors such as inflation. This appeal focuses on the hospital-specific rate used to calculate payments to the Hospital for 1984.[2]
 
 
 4
 On December 30, 1983, the Hospital received notice of the hospital-specific rate to be used in 1984. Both the Secretary and the Hospital agree that this hospital-specific rate was set incorrectly, yielding insufficient payments to the Hospital. In January 1984, the Hospital requested review of its 1984 payment rate by the Provider Reimbursement Review Board ("the Board"), the administrative agency empowered to review Medicare disputes such as the instant one. The Board refused to hear the Hospital's claim, contending that HCFAR 84-1 denied the Board jurisdiction until a year-end Notice of Program Reimbursement had been issued. As of early August 1986, the Hospital has not received its Notice of Program Reimbursement for 1984.[3]
 
 
 5
 The Hospital then sought district court review of the Board's refusal of jurisdiction pursuant to HCFAR 84-1.[4] The district court held that although the Board's action comported with HCFAR 84-1, that ruling is contrary to congressional intent and, therefore, invalid. The district court concluded that on the merits, the Hospital deserved the requested increase in its 1984 payment rate. The court remanded the case to the Board for the proper adjustment. This appeal followed.
 
 II.
 
 6
 Judicial review of an agency's interpretation of its governing statute begins with the statutory language and clearly expressed congressional intent. Board of Governors of the Federal Reserve System v. Dimension Financial Corp., --- U.S. ----, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986). Deference to an agency's interpretation is inappropriate if that interpretation is " 'inconsistent with the statutory mandate' " or " 'frustrate[s] the policy that Congress sought to implement.' " Securities Industry Association v. Board of Governors of the Federal Reserve System, 468 U.S. 137, 143, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984) (quoting FEC v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)). Under these standards of review, deference to HCFAR 84-1 is unwarranted.
 
 The relevant statutory provisions state:
 
 7
 Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... and ... any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board, if(1) such provider--
 
 
 8
 (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, or
 
 
 9
 (ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title, ....
 
 
 10
 (2) the amount in controversy is $10,000 or more, and
 
 
 11
 (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i), or with respect to appeals under paragraph (1)(A)(ii), 180 days after notice of the Secretary's final determination ....
 
 42 U.S.C. Sec. 1395oo(a).[5]
 
 12
 Section 1395ww(d), which is referenced in section 1935oo(a), defines "amount of payment" in terms of rates. See id. Sec. 1395ww(d)(1)(A).[6] Although other aspects of Medicare receipts may be set after the close of the year, the notice received by the Hospital on December 30, 1983, is the final determination of its rate of payment under PPS.
 
 
 13
 The definition of "amount of payment" in terms of rates and the District of Columbia Circuit's masterful explanation in Washington Hospital Center v. Bowen, 795 F.2d 139 (D.C.Cir.1986), lead us to conclude that the statute contemplates two separate reviewing schemes. Accord Charter Medical Corp. v. Bowen, 788 F.2d 728, 732 (11th Cir.1986). One type of review is available when a fiscal intermediary, such as Blue Cross, issues a Notice of Program Reimbursement. See 42 U.S.C. Sec. 1395oo(a)(1)(A)(i). The second type of review, which is at issue in this case, is available when the Secretary makes final decisions under PPS. See id. Sec. 1395oo(a)(1)(A)(ii). The Secretary's requirement of a Notice of Program Reimbursement before permitting a rate appeal effectively collapses the two reviewing schemes into one. Such an interpretation, which clearly contradicts the plain language of the statute, must not be upheld. We therefore conclude that HCFAR 84-1 is invalid, and immediate Board review of the Hospital's PPS rate is available. See Washington Hospital Center, at 144-48.
 
 
 14
 Our interpretation of the statutory language is bolstered by Congress's purpose in creating PPS. Through PPS, Congress intended to inform hospitals in advance of the amount of Medicare payments they would receive. Advance knowledge of definite receipts would create incentives for hospitals to provide services efficiently. See H.R.Rep. No. 98-25, 98th Cong., 1st Sess. 132, reprinted in 1983 U.S. Code Cong. & Ad.News 219, 351; see also S.Rep. No. 98-23, 98th Cong. 1st Sess. 47, reprinted in 1983 U.S.Code Cong. & Ad.News 143, 187. A system which promotes delay in determining the crucial PPS rates and which requires the fiscal intermediary to make PPS payments at rates which are known to be erroneous ill-serves Congress's goal. See Washington Hospital Center, at 148-49.
 
 
 15
 The Secretary argues that the anomaly of requiring erroneous payments, subject to potential adjustment in the distant future, is exactly what Congress intended. In support of this position, the Secretary pinpoints legislative history stating that "[i]n general, the same conditions, which apply for review by the [Board] and the courts would continue to apply." H.R.Rep. No. 25 at 143, reprinted in 1983 U.S.Code Cong. & Ad.News at 362. The Secretary construes "the same conditions ... for review" to mean that the former, cost-based system's requirement of a Notice of Program Reimbursement extends to rate reviews under PPS. This "requirement" is questionable, however, since a Notice of Program Reimbursement has no impact on PPS rates, which are predetermined and not subject to change. Like the District of Columbia Circuit, we find the Secretary's citation of one generalized statement insufficient to undermine the plain language of the statute and clear congressional intent. See Washington Hospital Center, at 149.
 
 
 16
 The Secretary argues further that permitting appeals such as the instant one will lead to inefficient piecemeal review of Medicare payments. We acknowledge that our decision today may result in two separate reviews of the Hospital's Medicare receipts for 1984. However, this result appears to be statutorily mandated. Furthermore, the availability of two reviews is not grossly inefficient. Those reviews, if they occur, will focus on independent aspects of payment decisions. Finally, the benefit of immediate review of the crucial rate-setting decision may substantially outweigh whatever inefficiencies may be caused by subsequent Board review of other payment decisions. In some cases, Board review of a rate decision will permit correction of errors before the end of the relevant year.[7] Such review minimizes the strain put on a hospital's cash flow by correcting insufficient payments promptly and limits the chaos created by delayed resolution of recognized disputes.
 
 III.
 
 17
 After invalidating HCFAR 84-1, the district court assumed jurisdiction over the merits of the Hospital's claim for additional payments for 1984. The district court's decision to reach the merits was error. The proper disposition is a remand to the Board.
 
 
 18
 Before a federal court decides the merits of an administrative case, the plaintiff must exhaust his administrative remedies. The first, nonwaivable requirement for exhaustion is that the request for benefits be presented to the Secretary. The second, waivable requirement is that the plaintiff fully pursue the remedies prescribed by the Secretary. Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984) (quoting Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)).
 
 
 19
 The parties do not dispute that the Hospital's request for Board review satisfied the nonwaivable exhaustion requirement. The parties also agree that if HCFAR 84-1 is invalid, Board review is available and has not yet occurred. Nevertheless, the district court decided that the requirement of full pursuit of administrative remedies should be waived, because a request for relief from the Board would prove "futile" and would yield only "fruitless delay." See Mullins Coal Co. v. Clark, 759 F.2d 1142, 1146 (4th Cir.1985) ("A litigant need not exhaust administrative remedies where their pursuit would be a futile gesture.").
 
 
 20
 Even if we assume that a waiver of exhaustion on the basis of "futility" is available in a case of this type, but cf. Ringer, 466 U.S. at 618, 104 S.Ct. at 2023 (suggesting waiver is possible only in cases in which the issue is "wholly 'collateral' " to benefit claim), there is no showing that Board review would, in fact, prove futile with respect to the Hospital's claim. The district court based its determination of futility on its interpretation of the Secretary's "prospective relief rule," 42 C.F.R. Sec. 412.72(a)(3)(ii) (1985). The rule states in relevant part:
 
 
 21
 (ii) The intermediary will recalculate the hospital's base-year costs, incorporating the additional costs recognized as allowable for the hospital's base year. Adjustments to base-year costs to take into account these additional costs--
 
 
 22
 (A) Will be effective with the first day of the hospital's first cost reporting period beginning on or after the date of the revision, order or finding, or review decision; and
 
 
 23
 (B) Will not be used to recalculate the hospital-specific portion as determined for fiscal years beginning before the date of the revision, order or finding, or review decision.
 
 
 24
 The district court interpreted the rule to bar the Board from ordering relief for 1984, a year which had already passed. The court, therefore, declared the prospective relief rule to be "arbitrary and capricious" and invalidated it with respect to this case.
 
 
 25
 The Secretary now contends, and two federal appellate courts agree, that in fact, the prospective relief rule does not bar retrospective payments in a situation such as the instant one. See Washington Hospital Center, at 149 n. 12; Charter Medical, 788 F.2d at 735. The Secretary claims that the rule applies only to the "collateral effect" given to base year (1982) appeals. The instant case, which challenges 1984 payments, is not a base year appeal. The Secretary, therefore, contends that full retrospective relief is available through individual appeal of the payments for a given year.[8] See Charter Medical, 788 F.2d at 735.
 
 
 26
 At this point, it is not necessary for us to decide the validity of the prospective relief rule or its impact, if any, on this dispute. It is sufficient to hold that under a reasonable interpretation of the rule, the Hospital could receive relief from the Board. Consequently, the district court's belief that further administrative proceedings would clearly prove futile is mistaken. Its concomitant waiver of the exhaustion requirement was error.
 
 
 27
 Accordingly, we affirm the district court's decision to invalidate HCFAR 84-1, but we reverse its decision to reach the merits of the Hospital's payment request and its invalidation of the prospective relief rule. This case is remanded to the district court, with instructions to remand it to the Board for administrative determination of the merits.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 In 1984, the first transition year, the hospital-specific rate determines 75% of the payment rate. That percentage decreases annually, so that in 1987, the final transition year, the hospital-specific rate determines 25% of the payment rate. See 42 U.S.C. Sec. 1395ww(d)(1)(C), amended by Pub.L. No. 99-272, Sec. 9102(b), 100 Stat. 82, 155 (1986)
 
 
 [2]
 The Secretary and the Hospital have settled their dispute over the rate used to calculate 1985 and 1986 payments
 
 
 [3]
 At oral argument, both parties were under the mistaken impression that the Notice of Program Reimbursement for 1984 had been issued recently. In a supplemental brief to this court, however, the Secretary admitted that no 1984 Notice of Program Reimbursement has been issued. The Secretary contends that the 1984 Notice of Program Reimbursement will be issued in the near future. See Appellant's Supplemental Brief at 2 n. 1 (brief filed Aug. 5, 1986)
 
 
 [4]
 Neither party has contested the district court's jurisdiction to review the Board's refusal of jurisdiction under HCFAR 84-1. The Board's denial of jurisdiction is a final, appealable order for purposes of judicial review under 42 U.S.C. Sec. 1395oo(f)(1). See Athens Community Hospital, Inc. v. Schweiker, 686 F.2d 989, 992-94 (D.C.Cir.1982), modified on other grounds, 743 F.2d 1 (D.C.Cir.1984)
 
 
 [5]
 The emphasized portions of the statute were added when PPS was created. See Social Security Amendments of 1983, Sec. 602(h)(1), Pub.L. No. 98-21, 97 Stat. 65, 165
 
 
 [6]
 Subsection (d) provides for some "additional payment[s]" for items such as indirect costs of medical education and outlier payments. See 42 U.S.C. Sec. 1395ww(d)(5)(A)(i), (B). These payments are not determined in the rate-setting notice. The Secretary argues that the inclusion of these payments, which are not rate-based, in subsection (d) means that "amount of payment under subsection ... (d)," 42 U.S.C. Sec. 1395 oo(a)(1)(A)(ii), cannot refer to PPS rate decisions
 We find the Secretary's reasoning unconvincing. The term "amount of payment" is clearly defined in terms of rates in subsection (d)(1)(A). The non-rate-based payments are designated "additional payment," id. Sec. 1395ww(d)(5)(A)(i) or "additional payment amount," id. Sec. 1395ww(d)(5)(B), not "amount[s] of payment." This different language suggests that "amount of payment" may be a term of art, referring to the rate-setting decisions in subsection (d)(1)(A).
 Alternatively, we could interpret "amount of payment" to refer to each of the payment decisions made under subsection (d). Under this interpretation, Sec. 1395oo(a)(1)(A)(ii) permits appeal of these various decisions whenever each determination is final. The PPS rate at issue in this case was final as of December 30, 1983.
 Because only rate decisions under subsection (d) are at issue in this appeal, it is unnecessary for us to determine the proper time for review of these other types of payments. At this juncture, it is sufficient to hold that the mere inclusion of other types of payments in subsection (d) does not mandate the Secretary's interpretation of the proper time for rate review, an interpretation which is inconsistent with the statutory language and with congressional intent. See infra.
 
 
 [7]
 The Board considered the Hospital's case in June 1984. If HCFAR 84-1 had not barred Board jurisdiction, this rate dispute may have been resolved by the summer of 1984, resulting in proper payments for the final months of the first transition year
 
 
 [8]
 The parties contest whether the available relief is, in fact, "full," since interest accrues only from the last day on which an appeal from a Notice of Program Reimbursement can be taken. See 42 U.S.C. Sec. 1395 oo(f)(2). The Hospital contends that this limitation bars it from recovering a substantial amount of lost interest. Because we have chosen to remand this case for Board determination of the exact amount owed to the Hospital, it is unnecessary to resolve the dispute over available interest at this time