**FRANKFORD HOSPITAL**

v.

**Carolyne K. DAVIS, Ph.D. Administrator, and the Health Care Financing Administration, et al.**

Civ. A. No. 84–3160.

United States District Court,
E.D. Pennsylvania.

Nov. 18, 1986.

Carl T. Bogus, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff.

Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., for Carolyne Davis.

Ronald B. Hauben, Jay H. Calvert, Jr., Eric Kraeutler, Philadelphia, Pa., for Blue Cross of Greater Philadelphia.

Joseph M. Masiuk, Asst. U.S. Atty., Philadelphia, Pa., Amy Yourman, Dept. of Health & Human Services, Office of Gen. Counsel, Washington, D.C., for Margaret Heckler, Sec. HHS.

## MEMORANDUM

RAYMOND J. BRODERICK, Senior District Judge.

The plaintiff, Frankford Hospital, a nonprofit general community hospital organized under Pennsylvania law and operating in Pennsylvania, brought this action against the Health Care Financing Administration ("HCFA") and its administrator Carolyne K. Davis; the Department of Health and Human Services ("HHS") and its former Secretary Margaret M. Heckler; and Blue Cross of Greater Philadelphia ("Blue Cross") and its President, David S. Markson. The complaint alleges that (1) in determining plaintiff's allowable costs for which the plaintiff will receive Medicare payments, Blue Cross improperly disallowed certain costs for plaintiff's fiscal year ending June 30, 1983; (2) that a regulation covering interest expense, 42 C.F.R. § 405.419, violates the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment on its face and as applied; (3) that a regulation prohibiting prospective relief, 42 C.F.R. § 405.474(b)(3)(i)(C), and a ruling issued by Davis, 49 Fed.Reg. 22,414–15 (May 29, 1984) ("HCFAR 84–1"), deprives the plaintiff of due process of law in violation of the Fifth Amendment; (4) that Davis, Heckler, Markson and Blue Cross have deprived the plaintiff of its First, Fifth and Fourteenth Amendment rights; (5) and that Markson and Blue Cross acted negligently in making cost determinations for the plaintiff's fiscal year ending June 30, 1983. The plaintiff asserts that as a result of the aforesaid acts, it has received and will in the future receive less under the Medicare Program than it would have otherwise received. Plaintiff seeks declaratory and injunctive relief, as well as damages equal to the sum of its alleged loss of payments under the Medicare program. Markson has been dismissed as a defendant by stipulation of the parties filed on January 24, 1985.

The federal defendants, Heckler, HHS, Davis and HCFA, have filed a motion to dismiss or in the alternative a motion for summary judgment, both of which motions Blue Cross has joined. The plaintiff opposes the motions and has filed a motion for partial summary judgment.

In their motion to dismiss, the federal defendants contend that this Court lacks subject matter jurisdiction for the following reasons: the plaintiff has not satisfied the prerequisites for judicial review set forth at 42 U.S.C. § 1395oo, which provides the exclusive avenue of jurisdiction over the action; and there is no justiciable controversy in connection with the validity of 42 C.F.R. § 405.474(b)(3)(i)(C). Blue Cross further contends that the regulation con-

cerning interest expense that the plaintiff seeks declared unconstitutional, 42 C.F.R. § 405.419(c), is not relevant to this action and in no way affects the plaintiff.

The plaintiff on the other hand, has moved for summary judgment of the following two bases: 42 C.F.R. § 405.-474(b)(3)(i)(C)(2) be declared unlawful and 42 C.F.R. § 405.419(b)(2)(iii) and (c)(1) be declared unlawful as applied. For the reasons that follow, the defendants' motion to dismiss will be granted.

In a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1), "the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action." 2A Moore's Federal Practice ¶ 12.07 [2.–1] at 12–45—12–46. There are two types of challenges which may be made pursuant to Rule 12(b)(1):

> ... 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the subject matter jurisdiction in fact, quite apart from any pleadings. [In t]he facial attack ... the court must consider the allegations of the complaint as true. [In t]he factual attack, however, ... there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).

This action involves Part A of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act") which provides reimbursement for specified hospital, extended care and home health services. Prior to October 1, 1983, the statute mandated that Part A providers were to be reimbursed based on the provider's "reasonable cost" of rendering covered services to eligible beneficiaries or, if lower, the customary charges for such services. 42 U.S.C. § 1395f(b). The term "reasonable cost" is defined at 42 U.S.C. § 1395x(v)(1)(A), and under that provision the Secretary has broad authority to determine what costs will be reimbursable. Generally, reimbursement was handled by private organizations acting as fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. § 1395h(a). Blue Cross is the fiscal intermediary for the plaintiff. Under this system the determination of "reasonable cost" was made after the close of the provider's fiscal year, based upon the provider's "cost report." 42 C.F.R. § 405.406(b) (1982). Upon receipt of the cost report, the intermediary analyzed the report, audited it if necessary, and furnished the provider with a written notice of program reimbursement ("NPR") setting forth its final determination of the total amount of reimbursement due under the program. 42 C.F.R. § 405.1803 (1982). The Provider Reimbursement Review Board ("PRRB"), an administrative appellate tribunal established by Congress, did not have jurisdiction under 42 U.S.C. § 1395oo(a) to review a reimbursement determination until the fiscal intermediary had issued an NPR.

Effective October 1, 1983, Congress mandated a new formula—the prospective payment system ("PPS")—for Medicare hospital reimbursement. Pub.L. No. 98–21. Under this new system, hospitals are reimbursed prospectively, on the basis of a predetermined, specific rate for each "discharge," according to the patient's diagnosis (a "diagnostic related group" or "DRG"). *See* 42 U.S.C. § 1395ww(d). There are 467 such diagnosis related groups. *See* 49 Fed.Reg. 34,728, 34,780–90 (Aug. 31, 1984) for a list of the DRGs.

The statute provides for a three-year transition period for most hospitals, during which a declining portion of the total "prospective payment" will be based on hospi-

tals' historical costs (the "hospital specific portion") and an increasing portion will be based on a regional or national rate per discharge (the "federal portion"). 42 U.S.C. § 1395ww(d). During the first year of the transition period, 75 percent of a hospital's rate will be based on its historical costs and only 25 percent on the national DRG rate, and by its fourth year the PPS rate will be composed entirely of the national adjusted prospective payment rate. 42 U.S.C. § 1395ww(d)(1)(A).

Hospitals begin to receive prospective payments on the first day of their first cost year that begins on or after October 1, 1983. 48 Fed.Reg. 39,824 (Sept. 1, 1983) (codified at 42 C.F.R. § 405.470(d)(1)). The "base year" for determining the portion of the prospective rate reflecting the individual hospital's historical costs is the cost year of the hospital ending on or after September 30, 1982 and before September 30, 1983. 42 C.F.R. § 405.474(b)(1)(i). Reimbursement under the prospective payment system will continue to be handled by private organizations acting as fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. § 1395h(a).

As noted above, the "hospital specific portion" is determined under 42 C.F.R. § 405.474(b)(1)(i) by the fiscal intermediary. This determination does not constitute an NPR, but rather is the fiscal intermediary's pre-NPR estimate of 1982 base year costs. *See Doctors General Hospital, Inc. v. Heckler,* 613 F.Supp. 1036, 1038 (S.D.Fla. 1985). The determination made for the fiscal year ending in 1983 serves as the basis for determining the hospital specific portion for the entire transition period, *i.e.,* during 1983 through 1987.

JURISDICTION

In its complaint, the plaintiff asserts that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331; Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.,* the Medicare Act, particularly § 1395oo; the First, Fifth and Fourteenth Amendments to the United States Constitution; 28 U.S.C. § 1651, the All Writs Act; 28 U.S.C. § 2201 *et seq.,* the Declaratory

Judgment Act; and the law of pendent jurisdiction.

■ The plaintiffs contend that pursuant to *Bowen v. Michigan Academy of Family Physicians,* —— U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), its claims are cognizable in this Court on the basis of 28 U.S.C. § 1331 and it need not exhaust its administrative remedies under the Medicare Act. The Court disagrees. *Michigan Academy* was an action by a group of physicians challenging the validity of the Secretary's instructions and regulations authorizing payment of Medicare Part B benefits in different amounts for similar services. The unique circumstances in *Michigan Academy* presented a statutory scheme under Part B of the Medicare Act whereby Congress had neither provided for nor specifically precluded judicial review of challenges to the validity of the Secretary's instructions and regulations. In light of the void left in the statutory framework, the United States Supreme Court, relying on "the strong presumption that Congress intends judicial review of administrative action," 106 S.Ct. at 2135, held that there existed federal question jurisdiction over challenges to the validity of the Secretary's instructions and regulations. The United States Supreme Court in *Michigan Academy* held that federal question jurisdiction was available because there was no other avenue by which the plaintiff could seek relief and because Congress had not precluded review of such challenges by a federal court. *Accord Colonial Penn Insurance Co. v. Heckler,* 721 F.2d 431, 437 (3d Cir.1983). Congress has, however, specifically provided for judicial review in federal district court of any final decision of the PRRB or any reversal, affirmance or modification thereof by the Secretary. 42 U.S.C. § 1395oo(f)(1). As pointed out by the United States Supreme Court in *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984):

The third sentence of 42 U.S.C. § 405(h) made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), [which requires administrative

exhaustion] to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act.

*Id.* at 613–17, 104 S.Ct. at 2021–22 (footnote omitted). It is clear, therefore, that constitutional challenges to the Secretary's regulations under Part A may be pursued in a federal court, but such challenges must be brought under the jurisdictional grants contained in the Medicare Act and in conformity with the same standards applicable to nonconstitutional claims arising under the Act. *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). *See Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 2022 (1984). This Court, therefore, does not have jurisdiction over the plaintiff's complaint pursuant to 28 U.S.C. § 1331, since as heretofore pointed out, challenges to the regulations under Part A must be brought under the jurisdictional grants provided for in the Medicare Act.

In *Salfi*, however, the Supreme Court conceded that exhaustion requirements may be satisfied in certain circumstances without "full exhaustion of internal review procedures ... * * * ... after a hearing" by the Secretary. The Supreme Court stated:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.... Plainly these purposes have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act. Once a benefit applicant has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's administrative needs, further exhaustion

would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.

422 U.S. at 765–66, 95 S.Ct. at 2467 (citation omitted). Based on this statement in *Salfi*, our Third Circuit has held, that

> if the legal issue is constitutional, since the administrative agency cannot decide that issue, no exhaustion is required ... Where the legal issue is statutory, however, the agency does have authority to decide it, subject of course to judicial review. The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the Secretary had taken a final position on that issue.

*Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 345–46 (3d Cir.1977) (citations omitted). *See also Kuehner v. Schweiker*, 717 F.2d 813, 817 (3d Cir.1983). This exception to the exhaustion requirement, as hereinafter pointed out, is inapplicable to this action.

■ As heretofore pointed out, the plaintiff also asserts jurisdiction under the All Writs Act, 28 U.S.C. § 1651. Although the All Writs Act is not an independent basis of jurisdiction, under very limited and exceptional circumstances, some courts have concluded that the Act empowers a court to preserve the *status quo*. *See Federal Trade Commission v. Dean Foods Co.*, 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966). For example, in *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020 (11th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), the court explored at length the relationship between 42 U.S.C. § 405(h) and the All Writs Act, and determined that the plaintiff must meet "heightened standards" for injunctive relief in order for the court to have jurisdiction under the All Writs Act. *Id.* at 1032. The court stated:

> The preclusion of review in section 405(h), and its purpose to ensure that the agency make the first determination, will best be effectuated by a standard of

review which requires (1) a virtual certainty of irreparable injury, (2) a similar certainty of success on the merits, ... (3) minimal harm to the agency, in the sense of disruption of its processes, and (4) the public interest clearly favoring the assumption of jurisdiction. All of these requirements must be satisfied.

711 F.2d 1020, 1033–34. However, the exceptional circumstances as outlined by the Eleventh Circuit have not been established by the plaintiff in this case. The plaintiff does not claim that there is a certainty of irreparable injury nor is there a certainty of success on the merits. Furthermore, issuance of an injunction at this stage would certainly disrupt the agency's process particularly in this case since the PRRB has assumed jurisdiction over the plaintiff's appeal and is currently considering the merits of the appeal. Finally, as in *Greater Tift*, this Court finds no "independent public interest that clearly favors the assumption of jurisdiction." *Id.* at 1035. This Court, therefore, does not have jurisdiction over this matter pursuant to the All Writs Act.

■ The plaintiff also asserts jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* The Declaratory Judgment Act, however, does not confer subject matter jurisdiction. It merely makes available an additional remedy in cases over which the federal courts have jurisdiction either by virtue of diversity or because of a federal question. Wright, *Law of Federal Courts* § 100 at 500–01 (3d ed. 1976). In conclusion, therefore, the only possible basis for jurisdiction pleaded by the plaintiff is the Medicare Act, specifically section 1395*oo*.

## HEALTH CARE FINANCING ADMINISTRATION RULING 84–1

■ Medicare appeals are governed by 42 U.S.C. § 1395*oo*(a), which was amended to conform with the changes in Medicare payment effected by the PPS. Section 1395*oo*(a) now provides in pertinent part:

§ 1395*oo*. Provider Reimbursement Review Board

(a) Establishment

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary in accordance with subsection (h) of this section and (except as provided in subsection (g)(2) of this section) any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board, if—

(1) such provider—

(A)(i) is dissatified with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, or

(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) or section 1395ww of this title, [PPS]

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i), or with respect to appeals pursuant to paragraph (1)(B) or (C), within 180 days after notice of such determination would have been received if such determination had been made on a timely basis.

As pointed out by the court in *Washington Hospital Center v. Heckler*, 795 F.2d 139 (D.C.Cir.1986), hospitals, pursuant to section 1395oo(a), began appealing deter-

minations made by their fiscal intermediaries contesting the hospital specific portions of their PPS rates. The PRRB initially accepted jurisdiction of many such appeals. On May 29, 1984, however, defendant Davis, administrator of the HCFA, issued HCFA Ruling 84–1. This ruling specifically provides that the PRRB does not have jurisdiction over an appeal until an NPR has been issued. HCFAR 84–1 provides:

> Provider Reimbursement Review Board jurisdiction over appeals from estimates of and modifications to base year costs under the prospective payment system. It is HCFA's ruling that an intermediary's estimation of a hospital's base year costs and modification made thereto, made for purposes of determining the hospital-specific rate under PPS [HCFA Form 1007] is neither a final determination of program reimbursement nor a notice of amount of program reimbursement [NPR] as required by the statute and regulations. Accordingly, the PRRB has jurisdiction to review an intermediary's modifications to base year costs, made for the purpose of implementing the prospective payment system, or the estimate of those costs as stated on HCFA form 1007, only after an NPR has been issued for the hospital's first cost reporting period under the prospective payment system.

49 Fed.Reg. 22413–22415. As a result, the PRRB denied all pending requests for hearings on the ground that an NPR had not been issued. *See, e.g., Doctors General Hospital, Inc. v. Heckler,* 613 F.Supp. at 1039. Because of the apparent inconsistency between § 1395oo(a) and HCFAR 84–1, numerous providers sought relief in the federal courts challenging the requirement in HCFAR 84–1 that a provider wait for an NPR prior to appealing to the PRRB. To date, more than 12 courts have held that HCFAR 84–1 is invalid in that it is inconsistent with § 1395oo(a) as well as other regulations promulgated by the Secretary which establish that a fiscal intermediary's base year cost determination *is final. See Episcopal Hospital, et al. v. Bowen,* No. 86–0626, slip op. at 9 n. 4 (Sept. 25, 1986

E.D.Pa.) (Newcomer, J.) (collecting cases) [Available on WESTLAW, DCTU database]; *St. Francis Hospital v. Bowen,* 802 F.2d 697 (4th Cir.1986); *Westlake Community Hospital v. Bowen,* No. 85–C–2400 (N.D.Ill. Oct. 3, 1986) [Available on WESTLAW, DCTU database]. Specifically, those cases have held that the fiscal intermediary's determination of a provider's PPS rate constitutes a final determination as that term is used in § 1395oo(a)(1)(A)(ii). *Episcopal Hospital,* slip op. at 12. Furthermore, the cases cited above have held that the PRRB has jurisdiction to hear a provider's appeal as soon as the fiscal intermediary determines the PPS rate and need not wait for the issuance of an NPR. It is important to note, however, that in these cases, no NPR had been issued to the provider and the PRRB had in each instance refused the provider's request for a hearing.

However, this action is distinguishable from the above-referenced cases because an NPR has been issued to the plaintiff. The complaint, filed on June 29, 1984 alleged that the plaintiff could not appeal Blue Cross' determination under PPS because HCFAR 84–1 required an NPR be issued in order to appeal to the PRRB. On January 25, 1985, however, before the plaintiff filed the within memorandum of law in reply to the motion to dismiss and in support of the plaintiff's motion for partial summary judgment, Blue Cross issued the NPR. Clearly, regardless of the validity of HCFAR 84–1, the PRRB had jurisdiction to hear the merits of the plaintiff's appeal as early as January 25, 1985. At that time, therefore, HCFAR 84–1 no longer presented a barrier to the plaintiff's appeal and the plaintiff could proceed with its administrative remedy. The issue of alleged harm to the plaintiff caused by HCFAR 84–1 became moot after Blue Cross issued the NPR on January 25, 1985.

Moot actions are beyond judicial review because they do not present a case or controversy for the court to resolve. As the United States Supreme Court stated in *United States Parole Commission v. Ger-*

*aghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)

> [M]ootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951 [23 L.Ed.2d 491] ... (1969).

445 U.S. at 396, 100 S.Ct. at 1208. The question regarding the validity of HCFAR 84–1 is not an issue because even a favorable decision by this Court would not entitle the plaintiff to relief since it already has received the relief sought. *Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Therefore, this Court is without jurisdiction regarding the plaintiff's claim concerning the validity of HCFAR 84–1 since the issue is moot.

## THE NO–RETROACTIVE RELIEF RULE

■ The plaintiff also challenges 42 C.F.R. § 405.474(b)(3)(i)(C)(2) (the "no-retroactive relief rule") as violative of the Due Process Clause of the Fifth Amendment because, the plaintiff asserts, it prohibits a recalculation of the hospital-specific portion for any fiscal year beginning before the date of the appeal decision. Section 405.-474(b)(3)(i)(C)(2) provides:

> The intermediary will recalculate the hospital's base year costs, incorporating the additional costs recognized as allowable for the hospital's base year. Adjustments to base year costs to take into account these additional costs will be effective with the first day of the hospital's first cost reporting period beginning on or after the date of the revision, order or finding, or review decision. The hospital's revised base year costs will not be used to recalculate the hospital-specific portion as determined for fiscal years beginning before the date of the revision, order or finding, or review decision.

42 C.F.R. § 405.474 (as amended Jan. 3, 1984, June 1, 1984, and Aug. 31, 1984). The plaintiff contends that even if it is successful in its appeal to the PRRB, no remedy will be available to it for the entire three years of the three year transition period due to the PRRB's congested calendar and the no-retroactive relief rule. The federal defendants, on the other hand, defend the no-retroactive relief rule on its merits. The Court is not persuaded by their defense of the no-retroactive relief rule. The Court, however, does not have jurisdiction to consider the merits of the plaintiff's challenge to the no-retroactive relief rule because the plaintiff's assertion that the no-retroactive relief rule prohibits a recalculation of its hospital specific portion is hypothetical since that rule has not been applied to the plaintiff. The rule's impact on the plaintiff is not "sufficiently direct and immediate ... to render the issue appropriate for judicial review...." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1966). As the United States Supreme Court stated in *Abbott Laboratories:*

> Without undertaking to survey the intracacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148–49, 87 S.Ct. at 1515 (footnote omitted). The plaintiff's challenge to the no-retroactive relief rule will not be ripe for adjudication until such time as the PRRB, after reviewing the plaintiff's appeal, determines that Blue Cross miscalculated the plaintiff's PPS rate. *Accord Doctors General Hospital, Inc. v. Heckler,* 613 F.Supp. 1036, 1039–40 (S.D.Fla.1985). *See also St. Francis Hospital v. Bowen,* 802 F.2d 697 (4th Cir.1986). Therefore this Court is without jurisdiction regarding the plaintiff's claim concerning the no-retroactive relief rule on the ground that the issue is not ripe for adjudication.

## THE INTEREST EXPENSE REGULATION

■ The plaintiff also challenges 42 C.F.R. § 405.419, which provides that a

provider's interest expense is generally an allowable cost for Medicare reimbursement purposes, on the ground that it favors religious organizations and therefore violates the Establishment Clause of the First Amendment both on its face and as applied. In its motion for partial summary judgment, the plaintiff requests this Court to declare the interest expense regulation unlawful as applied. Since the plaintiff has not exhausted its administrative remedies in that the Secretary has not rendered a final decision or established that the only issue is the constitutionality of a statutory requirement, *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467, this Court does not have jurisdiction to consider the merits of the plaintiff's constitutional attack on section 405.419.

Section 405.419 provides in pertinent part:

§ 405.419 Interest expense.

(a)(1) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost.

\* \* \* \* \* \*

(b) *Definitions* —(1) *Interest.* Interest is the cost incurred for the use of borrowed funds.

\* \* \* \* \* \*

(2) *Necessary.* Necessary requires that the interest:

(i) Be incurred on a loan made to satisfy a financial need of the provider. Loans which result in excess funds or investments would not be considered necessary.

(ii) Be incurred on a loan made for a purpose reasonably related to patient care.

(iii) *Be reduced by investment income* except where such income is from gifts and grants, whether restricted or unrestricted, and which are held separate and not commingled with other funds. Income from funded depreciation or provider's qualified pension fund is not used to reduce interest expense. Interest received as a result of judicial review by a Federal court (as described in § 405.-454(1) is not used to reduce interest expense.

(3) *Proper.* Proper requires that interest:

(i) Be incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made.

(ii) Be paid to a lender not related through control or ownership, or personal relationship to the borrowing organization. However, interest is allowable if paid on loans from the provider's donor-restricted funds, the funded depreciation account, or provider's qualified pension fund.

(c) *Borrower-lender relationship.*

(1) To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower.

\* \* \* \* \* \*

(2) Exceptions to the general rule regarding interest on loans from controlled sources of funds are made in the following circumstances.

\* \* \* \* \* \*

In addition, *if a provider operated by members of a religious order borrows from the order, interest paid to the order is an allowance cost.*

(Emphasis added). Pursuant to this regulation, necessary and proper interest expense, subject to certain restrictions, is an allowable cost. As can be clearly gleaned from subsection (b)(2)(iii), interest expense must be reduced by investment income. As the regulation also clearly provides, under subsection (c)(2), if a provider operated by members of a religious order borrows from the order, interest paid to the religious order is an allowable cost, notwithstanding the requirement in subsection (c)(1) that in order to be allowable, interest expense must be incurred on indebtedness with lenders or lending organizations which are not related to the borrower.

Pursuant to the "necessity test" in subsection (b)(2)(iii), Blue Cross adjusted the plaintiff's cost report to reflect an offset of investment income earned by FHCS on money contributed to FHCS by the plaintiff. In a letter dated March 30, 1984, in which Blue Cross considered FHCS to be a parent company, Blue Cross' Director of Medicare Audit and Payment explained that interest income related to the invested portion of the contribution to FHCS must be offset. (# 23 EX. D). The plaintiff contends that Blue Cross has promulgated its own rule that "interest expense is to be reduced by investment income earned by any party related to the hospital" by blending subsection (b)(2)(iii) with subsection (c)(2). The plaintiff further contends that investment income from contributions it made to FHCS should not be used to reduce its interest expense; that "Blue Cross refuses to recognize Frankford Hospital's contribution to FHCS because it claims they are related"; and that Blue Cross would not have made the adjustment if the plaintiff were a religious hospital. (# 23 at 39–40). The defendants contend, on the other hand that Blue Cross relied solely on subsection (b)(2)(iii) in making its adjustment to the plaintiff's cost report and that the plaintiff's interest expense was not disallowed on the basis of the borrower/lender relationship discussed in subsection (c)(2).

This Court does not have jurisdiction to consider the plaintiff's attack on the constitutionality of the regulation as applied because the plaintiff has not presented its claim at a sufficiently high level of administrative review and the Secretary has neither taken a final position on the matter nor made any determination that the only issue presented is constitutional. *Salfi*, 422 U.S. at 765–66, 95 S.Ct. at 2467. It is clear that further exhaustion by the plaintiff would not be futile nor would it be an unnecessary use of administrative resources.

Furthermore, without further analysis of the merits, it appears that plaintiff may lack the requisite standing to challenge the regulation in that Blue Cross did not invoke subsection (c)(2), the alleged unconstitutional subsection, when making adjustments to the plaintiff's cost report. As the United States Supreme Court stated in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982):

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608 [60 L.Ed.2d 66], ... (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925 [48 L.Ed.2d 450] ... (1976).

454 U.S. at 472, 102 S.Ct. at 758. Clearly, standing requires that the "party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

In light of the finding that this Court does not have jurisdiction to consider the merits of plaintiff's challenge to 42 C.F.R. § 405.419, the Court does not base its determination on the ground that the plaintiff lacks standing.

CONCLUSION

For the reasons discussed in this Memorandum, this Court does not have jurisdiction to consider the plaintiff's challenge to HCFAR 84–1 because the issue is moot; the Court does not have jurisdiction to consider the no-retroactive relief rule because the issue is not ripe for adjudication; and the Court does not have jurisdiction to consider the interest expense regulation because the plaintiff has not exhausted its administrative remedies before the PRRB and the Secretary. In view of the fact that the Court will dismiss all of the plaintiff's alleged federal claims on the ground that it

is without subject matter jurisdiction, it declines to exercise pendent jurisdiction over the plaintiff's state law negligence claim against Blue Cross. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The plaintiff's state law negligence claim against Blue Cross will be dismissed without prejudice to the plaintiff's right to transfer this claim to state court pursuant to the transfer provisions of 42 Pa.Cons. Stat.Ann. § 5103(b).

## ORDER

AND NOW, this 18th day of November, 1986, upon consideration of the defendants' motion to dismiss all of the claims in the plaintiff's complaint, for the reasons set forth in this Court's Memorandum of November 18th, 1986

IT IS ORDERED: The defendants' motion to dismiss all of the claims in the plaintiff's complaint is GRANTED on the ground that this Court is without subject matter jurisdiction.

IT IS FURTHER ORDERED: The plaintiff's pendent state law negligence claim against Blue Cross is DISMISSED without prejudice to the plaintiff's right to transfer this claim to state court pursuant to the transfer provisions of 42 Pa.Cons.Stat.Ann. § 5103(b).